Homer B. ATWOOD, Donald Froemke, Walter H. Hanson, George E. Herron, Ray Hoiness, Roy McCrady, Everett Nelson, Calvin B. Rickard, Charles A. Smyth, Oliver Staudinger, John P. Stennick, and William Stennick, Plaintiffs,

v.

PACIFIC MARITIME ASSOCIATION, Portland Stevedoring Company, an Oregon Corporation, and Local 21 of the International Longshoremen's and Warehousemen's Union, Defendants.

Civ. No. 74–853.

United States District Court, D. Oregon.

May 17, 1977.

cargo of paper rolls aboard the M. S. ILSE SCHULTE at the Port of Longview, Washington. A safety grievance arose, some longshoremen contending that the wrong types of clamps were in use. The "gangs" stopped work, stood by, and awaited a ruling by the local arbitrator, who was called pursuant to the collective bargaining agreement in effect among the defendants. The arbitrator ruled that the working conditions were safe.

What happened next is subject to dispute. Plaintiffs seem to claim that they were on station and willing to begin loading, but other members of their "gangs"—not parties here—refused to start work. Since the holds, winches, dock, etc. must be fully manned before loading can begin, no cargo moved. The Employers suggest collusive activity on the part of all members of the "gangs".

In any event, the Employers terminated the men and requested the Longview Joint Port Labor Relations Committee to suspend all those involved in the incident from all work subject to the collective bargaining agreement for fifteen days.

The matter was processed by a series of joint Union-Employer committees and arbitrators, with the Union actively representing the plaintiffs and resisting any proposal to punish them.

In January, 1970, the matter reached the Coast Arbitrator (the highest level of appeal under the contractual grievance procedure). Plaintiffs meanwhile had already "served" their fifteen-day suspensions, though the Union had dispatched at least some of them to jobs offered by others than the defendant Employers during the suspension period. The Coast Arbitrator remanded the case on a procedural question but retained jurisdiction to dispose of the case should it again have been referred to him. He did not reach the merits of plaintiffs' claim that they were improperly suspended.

During the next three and one-half years the grievance was discussed at numerous meetings of the Longview Joint Port Labor

Charles Robinowitz, Portland, Or., for plaintiffs.

William F. Lubersky, Richard C. Hunt, Dezendorf, Spears, Lubersky & Campbell, Portland, Or., for Pacific Maritime Ass'n and Portland Stevedoring Co.

Raymond J. Conboy, Pozzi, Wilson & Atchison, Portland, Or., for Local 21.

## MEMORANDUM ORDER

SKOPIL, District Judge.

### BACKGROUND

This is an action under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). At all relevant times plaintiffs were longshoremen members of defendant Local 21, International Longshoremen's and Warehousemen's Union ("Union"). On April 2, 1968, plaintiffs were employed by defendant Portland Stevedoring Company. Defendant Pacific Maritime Association is and was bargaining representative for the stevedoring company. I refer collectively to these latter two defendants as the "Employers".

On April 2, 1968, plaintiffs were assigned as members of longshore "gangs" loading a

Relations Committee, but no final resolution occurred. Finally, the Union membership discussed the matter at a meeting in November, 1973, and voted to instruct the Union members of the Joint Port Committee not to pursue the case further.

Plaintiffs filed this action in October, 1974. They contend that the Union breached its duty of fair representation in abandoning the grievance. They contend that the Employers breached the collective bargaining agreement in firing them. Plaintiffs originally sought damages from both the Union and the Employers, and punitive damages from the Employers. Plaintiffs also seek recovery from the Employers on various state law theories of intentional infliction of emotional distress and outrageous conduct. As to these state law claims, it is not clear whether plaintiffs allege jurisdiction on diversity or pendent grounds, or both.

By prior order filed October 13, 1976, I denied motions for summary judgment filed by plaintiffs and the Employers. I also granted a motion by the Employers to dismiss the claims for punitive damages and emotional distress. Finally, I ordered that the issue of the Union's liability for breach of the duty of fair representation be segregated for trial from the issue of breach of the collective bargaining agreement.

Counsel have filed a number of additional motions. I heard oral argument on these motions on April 22, 1977. In deciding these motions I have also had the benefit of extensive memoranda as well as helpful responses to my questions at oral argument.

1. See discussion of Employers' Motion to Refer Case to Grievance Procedure, Section C, *infra*.

2. See discussion of Employers' Motion to Strike Demand for Jury Trial on Issue of Duty of Fair Representation, Section B, *infra*.

3. This action was commenced in October, 1974. The motion to dismiss the Union was filed in March, 1977.

4. Plaintiffs first presented their position to me that they no longer sought to hold the Union

## A. PLAINTIFFS' MOTION TO DISMISS LOCAL 21 OF THE INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION

■ As noted in my order filed October 13, 1976, and as reaffirmed by counsel in their memoranda and at oral argument, the parties concede that the initial issue in this case is whether the Union breached its duty of fair representation to plaintiffs. It is not necessary to determine[1] whether the defendant Employers breached the collective bargaining agreement unless and until the trier of fact[2] finds that the Union breached its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1970); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

While plaintiffs concede, as noted, that they must *prove* that the Union breached its duty of fair representation, they desire at this late date[3] to dismiss the Union as a *party*. Plaintiffs' position is that the Employers are solely liable for any of plaintiffs' damages and thus that it would be appropriate to drop the Union as a party defendant.[4]

The Union, not surprisingly, does not oppose this motion, while the Employers vigorously contend that it should be denied.

The first step in my consideration of this motion is to determine the applicable legal standard for evaluating the respective positions of the parties. Plaintiffs fail to state upon which Federal Rule of Civil Procedure they bring their motion. The Employers assume that Rule 21 (court may drop parties in case of misjoinder at any stage of the proceedings on such terms as are just) applies. The Union is unclear as to the rule upon which it relies in supporting the motion.

liable for damages in a letter from counsel dated February 10, 1977. The letter states in part at page 2:

"... I can inform the Court as well that the plaintiffs will seek to hold the employer and the PMA solely liable for all of their damages and not the Union whose only fault was in failing to properly and fairly represent them on these claims."

While I am of the tentative opinion that Rule 41(a)(2) (unless prior to appearance by adverse party or by stipulation, dismissal by plaintiff to be by order of court "upon such terms and conditions as the court deems proper") applies here, it is not necessary for me to so decide. The same standard applies whether Rule 21 or Rule 41(a)(2) is the appropriate procedural basis for this motion. See *Altman v. Liberty Equities Corp.*, 54 F.R.D. 620 (S.D.N.Y.1972); 5 Moore's Federal Practice ¶ 41.06–1 (1976).

In considering a motion by plaintiffs to dismiss a defendant who is not misjoined and whose presence does not destroy subject matter jurisdiction, I must exercise my discretion considering the rights of all the parties. *Fair v. Trans World Airlines*, 22 F.R.D. 60 (E.D.Ill.1957); see 9 Wright & Miller, Federal Practice § 2364 (1971). The issue was well stated by one court as follows:

> "After issue has been joined, a motion by the plaintiff for a voluntary dismissal of a suit . . . calls for the exercise of judicial discretion to avoid an unfair effect on anyone else incident upon such a termination of the suit. The fact that the suit will be dismissed with prejudice [5] to the plaintiff is not the only consideration before the court; the possible effect on others must be considered." *Beaver Associates v. Cannon*, 59 F.R.D. 508, 510 (S.D.N.Y.1973).

I find that it would be unfairly prejudicial to dismiss the Union at this stage in the proceedings. There are a number of reasons for this decision.

First and most important, it is simply unfair to expect the Employers to litigate and defend the Union against plaintiffs' claim of unfair representation. The Union has best access to the appropriate witnesses and evidence and should defend its own position. While the Employers certainly have an interest in this issue and may participate in its trial, they should not be required to assume sole responsibility—especially in view of the relative longevity of this action.

Second, the Employers have relied upon the presence of the Union in this case. If plaintiffs had not originally joined the Union as a party defendant, the Employers may well have been entitled to implead the Union as a third-party defendant. Fed.R. Civ.P. 14(a). Alternatively, the Employers may well have successfully moved for joinder of the Union under Rule 19. See *Kinnunen v. American Motors Corp.*, 56 F.R.D. 102 (E.D.Wis.1972); *Johnson v. Colts, Inc.*, 306 F.Supp. 1076 (D.Conn.1969). As a matter of judicial efficiency, it would be inappropriate at this time to drop a party when by subsequent motion it is likely that the party will come back into the case.

Third, there is pending before me a Motion to Refer Case to Grievance Procedure. By this motion the Employers seek reference back to the contractual grievance machinery for consideration of the breach of contract claim in the event that it is found that the Union unfairly represented plaintiffs. As I indicate in Section C, *infra*, it is not necessary to decide the motion to refer unless and until there is a finding of breach of duty of fair representation. At oral argument counsel for the Union conceded that it is necessary to retain the Union as a party as long as the motion to refer is still pending for the reason that any order to pursue the grievance process would necessarily be directed to the Union as well as the other parties.

Finally, the issue of apportionment of liability for damages between the Union and the Employers is pending in this case. Even though the Employers did not file a cross-claim against the Union, the issue of apportionment of damages will be before the court or arbitrator if a breach of contract is found. See *Hines v. Anchor Motor Freight, supra*, 424 U.S. at 572–573, 96 S.Ct. 1048, 47 L.Ed.2d 231 (Stewart, J., concurring). Despite the fact that plaintiffs have

---

5. Plaintiffs do not state whether they seek a dismissal with or without prejudice. Under the circumstances of this case, if I were to find that an order of dismissal was appropriate, such dismissal would be with prejudice. See Fed.R. Civ.P. 41(a)(2) (last sentence).

disclaimed any intention to recover damages from the Union, the Employers are entitled to argue that part of plaintiffs' damages, if any, are properly attributable to the Union. As stated by the Supreme Court in *Vaca v. Sipes, supra:*

"The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." 386 U.S. at 197–198, 87 S.Ct. at 921.

At this late date the Employers should not be deprived of the presence of the Union as a party in the event that this case reaches the stage at which an apportionment of damages is necessary.

## B. EMPLOYERS' MOTION TO STRIKE PLAINTIFFS' DEMAND FOR JURY TRIAL ON DUTY OF FAIR REPRESENTATION ISSUE

In my order filed October 13, 1976, I directed that the two major claims in this case (unfair representation and breach of collective bargaining agreement) be segregated for separate trials. I stated, "The issues of breach of collective bargaining agreement and damages will be tried only if it is found that Local 21 breached its duty of fair representation to plaintiffs." Order, October 13, 1976, at 2. The Employers now argue that plaintiffs are not entitled to trial by jury on this threshold fair representation claim. Fed.R.Civ.P. 39(a)(2).

The decisions interpreting the Seventh Amendment right to trial by jury are inconsistent within the context of fair representation cases. Some courts deny trial by jury. In *Acheson v. Bottlers Local 896*, 83 L.R.R.M. 2845 (N.D.Cal.1973), for example, the court held, "Suits based on a labor union's duty of fair representation are equitable in nature" and therefore not entitled to trial by jury. 83 L.R.R.M. at 2846. Similarly, another court denied trial by jury on the ground that the rights and duties involved in an unfair representation claim were unknown at common law. *Brady v. Trans World Airlines*, 196 F.Supp. 504 (D.Del.1961), aff'd, 401 F.2d 87 (3d Cir. 1968), cert. denied, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969).[6]

Other courts, however, conduct the three-pronged analysis of *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), and reach the result that a party in a fair representation action is entitled to a jury. The Court in *Minnis v. International Union*, 531 F.2d 850 (8th Cir. 1975), for example, dealt with the *Ross v. Bernhard* tests as follows. First of all, the Court felt that a fair representation action could be analogized to a common law tort or characterized as one to enforce a statutory liability, both entitled to a jury under the *custom prior to merger of law and equity.* See *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974). Secondly, the court recognized that the damages sought by plaintiff Minnis was a traditional legal *remedy.* Finally, the court held that the *practical abilities and limitations of juries* would not prevent fair consideration by a jury of an unfair representation claim. To similar effect are *Rowan v. Howard Sober, Inc.*, 384 F.Supp. 1121 (E.D.Mich.1974) and *Lucas v. Philco-Ford Corp.*, 380 F.Supp. 139 (E.D.Pa. 1974).

■ As noted in the previous section of this order, plaintiffs have abandoned their claims for damages against the Union. Accordingly, the only relief possible at the close of the fair representation phase of the case—assuming that plaintiffs prevail on this issue—is either an order to resume the grievance process[7] or an order to proceed

---

6. See also *Coleman v. Kroger Co.*, 399 F.Supp. 724 (W.D.Va.1975) (advisory jury under Fed.R. Civ. P. 39(c)); *Harrison v. Chrysler Corp.*, 60 F.R.D. 9 (S.D.Ind.1973); *Nedd v. Thomas*, 316 F.Supp. 74 (M.D.Pa.1970).

7. See discussion of Employers' Motion to Refer Case to Grievance Procedure, Section C, *infra.*

with trial by jury[8] against the Employers on the claim of breach of contract. The relief sought by the plaintiffs, as a condition of being able to proceed against the Employers for damages, is distinctly equitable in character. As stated in *Rowan, supra,* "The Court . . . finds that it, without the aid of a jury, must decide whether plaintiffs are entitled to receive any equitable relief." 384 F.Supp. at 1125. Further, I feel that an action for breach of duty of fair representation is analogous to a suit in equity for breach of a fiduciary duty, as to which no constitutional right to trial by jury attaches.

The segregated issue of breach of duty of fair representation will thus be tried to the court.[9]

## C. EMPLOYERS' MOTION TO REFER CASE TO GRIEVANCE MACHINERY

The Employers request that I order the parties to further process the grievances under the contractual grievance and arbitration procedure in the event that I find that the Union breached its duty of fair representation. Plaintiffs oppose the mo-

---

**8.** At oral argument all the parties conceded that if the trier of fact finds that the Union breached its duty of fair representation and if I then deny the Employers' Motion to Refer Case to Grievance Procedure, then plaintiffs are entitled to a jury trial of the breach of contract claim.

**9.** After I filed my order of October 13, 1976, in which I indicated that the fair representation issue would be segregated for trial, plaintiffs sent me numerous letters arguing that such segregation would be inappropriate. While I am always happy to receive letters from counsel (provided, of course, that copies are sent to opposing counsel), these letters are not made a part of the record. Dissatisfaction with a ruling of the court should properly be expressed through a timely and otherwise appropriate motion.

Though no motion to reconsider the order to segregate issues has been filed, I note briefly that Rule 42(b) permits the court to order separate trials of "any separate issue" when such action "will be conducive to expedition and economy". While I have no opinion on the merits of plaintiffs' claim of unfair representation and will reach no conclusion on the matter until after consideration of all the evidence, it is clear that plaintiffs have a difficult task ahead

---

tion, as does the Union (as stated by the Union's counsel at oral argument).

Since this motion is contingent on plaintiffs' success on the fair representation claim, it is not necessary for me to decide it at this time, and I decline to do so.

Following trial of the fair representation issue, if I decide that plaintiffs prevail, I will proceed to consider an appropriate remedy. At that time I will consider the memoranda on file concerning reference to the grievance procedure .as well as the comments of counsel at oral argument. If I then decide to deny the Employers' motion, I will direct the Clerk to set a date for jury trial of the claim of breach of collective bargaining agreement.

## D. PLAINTIFFS' MOTION FOR RECONSIDERATION OF CLAIM FOR OUTRAGEOUS CONDUCT

In the course of this action plaintiffs have argued various theories possibly entitling them to extraordinary relief against the Employers. The underlying factual allegation is that the Employers sought the fifteen-day suspension of plaintiffs as part

---

of them. A breach of duty of fair representation is not established by a mere showing that the grievance proceedings terminated adversely to plaintiffs. *Elrod v. Teamsters,* 85 L.R.R.M. 2189 (9th Cir. 1973). Rather, the initial issue in this case is whether the decision to terminate the grievance as made by the Union at a membership meeting was arbitrary. The initial inquiry must therefore concern the facts surrounding this decision, not the facts surrounding the alleged breach of contract.

There may be some overlap in the evidence, but the issues are conceptually separate. It is simply not necessary to determine whether the Employers breached the collective bargaining agreement in order to determine if the Union breached its duty of fair representation. The initial trial will be concerned with the facts surrounding the decision to abandon the grievances, not the underlying merits of the grievances themselves. In this connection, for example, plaintiffs will initially be permitted to offer any evidence they may have that the Union believed that the grievances were meritorious or likely of success. But plaintiffs will not initially be permitted to introduce evidence that the grievances were in fact meritorious or likely of success.

of an "economic power play to force the plaintiffs and others to identify the guilty parties". Pl. Mot. at 2.

While plaintiffs' motion is apparently concerned only with state law claims for outrageous conduct or intentional infliction of emotional distress, discussion at oral argument covered the availability of extraordinary relief under both federal and state law. I have undertaken a reconsideration of the entire subject.

■ As to federal labor law, I feel that the decision in *Williams v. Pacific Maritime Association,* 421 F.2d 1287 (9th Cir. 1970) is controlling in its holding that punitive damages are not available in an unfair representation/breach of contract action. The more recent case of *Cooke v. Orange Belt District Council,* 529 F.2d 815 (9th Cir. 1976), involved violations of the Labor-Management Reporting and Disclosure Act. The decision does not cite *Williams,* and there is no reason to believe that it overrules *Williams sub silentio.*

■ As to the state law claims, it is unclear what basis of jurisdiction is asserted by plaintiffs. At oral argument counsel sometimes referred to "pendent" claims but at one point stated that jurisdiction was based upon the diversity of citizenship of those plaintiffs resident in Washington. Whichever basis of jurisdiction is asserted, I hold that state law is preempted by the federal statutes in this area. · In other words, in cases involving alleged breaches of duty of fair representation or breach of collective bargaining agreements, the sole remedies are those of the federal statutory law and federal common law developing under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). As stated by the *Williams* court:

> "We conclude that the Congressional policy on these matters as manifested by the federal labor laws, is such that it was intended to be controlling and therefore preempts state law to the contrary." 421 F.2d at 1289.

See also *Brady v. Trans World Airlines, supra,* where the court states:

" . . . [T]he regulation of the economic relations between labor and management is an exceedingly delicate matter, and this Court is unwilling to employ the crude device of punitive damages as a remedy in causes founded on a detailed and pervasive federal scheme without express authorization from Congress." 196 F.Supp. at 506.

A case relied on by plaintiffs, *Agis v. Howard Johnson Company,* Mass., 355 N.E.2d 315 (1976), involved neither union conduct nor enforcement of any collective bargaining agreement. The acts there alleged are not regulated by federal labor law. Accordingly, there was no federal preemption of the state cause of action for infliction of severe emotional distress found to be stated by the Supreme Judicial Court of Massachusetts.

## E. EMPLOYERS' MOTION FOR RECONSIDERATION OF MOTION FOR SUMMARY JUDGMENT

■ In my order of October 13, 1976, I stated:

> "The parties concede that resolution of the two sets of cross motions for summary judgment depends on whether there is a genuine issue of material fact with respect to the claim against Local 21 for breach of duty of fair representation. I find that the circumstances surrounding the union's decision to abandon plaintiffs' grievance presents such an issue. Plaintiffs should have the opportunity to show, if they can, that the action of the union was 'arbitrary' within the meaning of *Beriault v. ILWU,* 501 F.2d 258 (9th Cir. 1974)." Order, October 13, 1976, at 1.

Nothing has happened since I entered my order to change my opinion on this matter. The Employers now argue:

> " . . . The motion to dismiss Local 21 recently filed on behalf of all plaintiffs . . . strongly suggests that now all of the plaintiffs share the view that the union has not breached its duty of fair representation." Employers' Mot. at 2.

Plaintiffs, of course, do continue to contend that the Union breached its duty of fair

representation. Plaintiffs' position is that all the *damages* caused by this breach are properly attributable to the Employers (or that if any damages are attributable to the Union, plaintiffs no longer desire to recover such damages).

### F. EMPLOYERS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In the event that I deny the motion for reconsideration of the motion for summary judgment, the Employers request that summary judgment be entered against plaintiffs Froemke, Rickard, McCrady, and William Stennick. The Employers point to deposition testimony by the four plaintiffs to the general effect that each has no claim or complaint against the Union.

In response to this motion each of these four plaintiffs filed an affidavit explaining his deposition testimony. Each affiant states that the Union dropped the grievance without apparent reason. For purposes of summary judgment I will not hold possibly ill-advised answers on deposition against these plaintiffs.

The affidavits present a genuine issue of material fact—whether or not the action of the Union was "arbitrary" within the meaning of *Beriault v. ILWU, supra.*

### CONCLUSION AND ORDER

As a result of the dispositions of the motions now before me, counsel should prepare for a court trial of the claim of unfair representation. If plaintiffs prevail, I will include in my decision a disposition of the Employers' Motion to Refer Case to Grievance Procedure. In other words, if plaintiffs establish a breach of the duty of fair representation, I will immediately determine whether the breach of contract claim should proceed via the contractual grievance machinery or by jury trial.

Any further pretrial motions should be filed within seven days of the date this order is filed. A status call will be held approximately 28 days thereafter, at which time any such motions will be argued and firm final pretrial conference and trial dates will be set.

It is ORDERED as follows:

(1) Any further pretrial motions will be filed within seven days of the date this order is filed.

(2) The Clerk will set this matter for status call and argument of any pending motions approximately five weeks from the date this order is filed.

(3) Plaintiffs' Motion to Dismiss Local 21 of the International Longshoremen's and Warehousemen's Union is denied.

(4) Employers' Motion to Strike Plaintiffs' Demand for Jury Trial on Duty of Fair Representation Issue is granted.

(5) Disposition of Employers' Motion to Refer Case to Grievance Machinery is continued pending result of trial of segregated issue of Union's breach of duty of fair representation.

(6) Plaintiffs' Motion for Reconsideration of Claim for Outrageous Conduct is denied.

(7) Employers' Motion for Reconsideration of Motion for Summary Judgment is denied.

(8) Employers' Motion for Partial Summary Judgment is denied.